**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA**

| | |
|---|---|
| **NATHANIEL D. BETHEA, an individual;** | |
| **Plaintiff,** | **8:17CV135** |
| **vs.** | |
| **ACCESS BANK, a Nebraska bank;** | **MEMORANDUM AND ORDER** |
| **Defendant.** | |

This matter is before the Court on the Motion for Summary Judgment, ECF No. 36, submitted by Defendant Access Bank. For the reasons stated below, the Motion will be granted and this matter will be dismissed, with prejudice.

## BACKGROUND

Unless otherwise indicated, the following facts are those stated in the parties' briefs, supported by pinpoint citations to admissible evidence in the record, in compliance with NECivR 56.1[1] and Federal Rule of Civil Procedure 56.

Access Bank employed Plaintiff Nathaniel Bethea from December 2014, until his termination in December 2015. Bethea applied for a teller position on November 24, 2014. The job posting stated that tellers at Access Bank were expected to provide customer service, handle deposits and withdrawals, answer phone calls, and open and

---

[1] *See* NECivR 56.1(b)(1):

The party opposing a summary judgment motion should include in its brief a concise response to the moving party's statement of material facts. The response should address each numbered paragraph in the movant's statement and, in the case of any disagreement, contain pinpoint references to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other materials upon which the opposing party relies. <u>Properly referenced material facts in the movant's statement are considered admitted unless controverted in the opposing party's response.</u>

close the bank.  One of the listed "Major Duties and Responsibilities" of the position was the "ability to work on the weekend when the branch is open." Teller Job Description at 1, ECF No. 37-3, Page ID 298.  In Bethea's initial phone interview, interviewers asked about Bethea's available hours and he responded that he had "open availability." Phone Interview Response Notes at 1, ECF No. 37-4, Page ID 301.  During the interview and hiring process, Bethea did not inform the Bank that he was unable to work weekends or that he required any other scheduling restrictions.

Access Bank hired Bethea and he began working on or about December 8, 2014, at the Shadow Lake branch in Papillion, Nebraska.  Access Bank generally employed four tellers, including Bethea, at that location.  For safety and security, the Bank required at least two tellers to be on duty at all times when the Bank was open, *i.e.,* from 9:00 a.m. until 5:00 p.m. on weekdays, and from 9:00 a.m. until noon on Saturdays.

Access Bank required each teller to work occasionally on Saturdays. The Papillion branch rotated these shifts among its four tellers, and each teller generally worked one or two Saturdays per month.  To prevent overtime costs, the Bank typically scheduled a teller to work one half-day during the week if the individual was scheduled to work a Saturday shift.

Throughout his employment, Bethea worked one or two Saturdays per month.  In the months preceding his termination, Bethea was scheduled to work, and actually worked, on several Saturdays:  August 22, 2015; September 12, 2015; October 9, 2015; October 31, 2015; and November 28, 2015. Ex. 1D through 1H, ECF Nos. 37-5 through 37-9.  Bethea never objected to working any of these Saturdays.  Prior to the week of December 12, 2015, Bethea never advised the Bank that he was unable to work a

Saturday shift for which he was scheduled.  Bethea did not notify the Bank of any religious beliefs during the hiring process and admits that prior to his time at Access Bank, he was not spiritual.

Sometime around September or October of 2015, Bethea "started to do research" and "look into it."  Bethea Dep. 177:15-22; 181:7-17, Ex. 1A, ECF No. 37-2. As a result of his research, Bethea began to identify as a "Hebrew Israelite, a true Jew," but drew a distinction with being "Jewish" because the suffix '-ish' implied an individual was "kind of" a member of the faith.  Bethea Dep. at 176:23-177:8, Ex. 1A, ECF No. 37-2.  Although Bethea had no specific church or pastor, and had not attended traditional Jewish services, he met weekly with two individuals, Jonathan Johnson and Ian Cunningham, to study the Bible, watch religious videos, and pray.  Bethea described these meetings as attending "church."  Bethea Dep. 185:17-21, Ex. 1A, ECF No. 37-2. Bethea listed Johnson as a reference on his employment application to the Bank on November 24, 2014.

Bethea claimed his religious beliefs required him to recognize the Sabbath—Saturday.  He described his religious tradition as "honoring the Sabbath Day, which stems from Judaism and Christianity pertaining to the Law, New Testament, and Hebrew Israelite customs." Answers to Interrogs. at 5, ECF No. 37-10, Page ID 311. According to Bethea, the Sabbath was a day to "relax, be with family, be with friends, [have] fellowship, and take it easy." Bethea Dep. 186:19-187:7, ECF No. 37-2. Under Bethea's interpretation of the Sabbath, it was not a literal day of rest, as he could meet with friends, do household chores when necessary, or watch a movie.  Bethea testified that with regards to Saturdays, he lived a "pretty normal life, day-to-day, like any other

individual." Bethea Dep. 188:1-10, Ex. 1A, ECF No. 37-2. However, Bethea claimed his beliefs prevented him from working on Saturdays because "we're not going to put money before that day [the Sabbath]. We're not going to chase after anything that is burdensome to us." Bethea Dep. 186:19-25, Ex. 1A, ECF No. 37-2.

Bethea was assigned to work on Saturday, December 12, 2015. He was made aware of that schedule approximately two weeks before December 12. As was typical for employees working a Saturday shift, Bethea was scheduled to work a half-day on Monday, December 7. On December 8, 2015, Bethea asked his supervisor, Blaire Scott, if he could have Saturday off to observe the Sabbath. This was the first time Bethea notified Access Bank that his religious beliefs prevented him from working on a Saturday. Although Bethea claims Scott was condescending in her response, Scott stated he could have Saturday, December 12, off if he could find someone to work overtime, and open and close accounts.

Shortly after speaking with Scott, Bethea advised Neal Krauss, Access Bank's Vice President/Market Manager, that Bethea would like to have Saturdays off for the Sabbath. Although Bethea mentioned the Sabbath, he was not sure if Krauss understood what that meant and the two did not have a detailed discussion. Krauss reiterated Scott's message, that if Bethea could find a replacement, he could have December 12 off. Bethea did not explain to Scott or Krauss why he could no longer work on Saturdays despite consistently working Saturdays for nearly a year.

On December 8, 2015, Bethea sent an email to fellow teller, Becca Strawhecker, asking her to text him. Bethea wanted her to work for him on Saturday, December 12. When Strawhecker texted a few minutes later, the following exchange occurred.



Exhibit 1N, ECF No. 37-15.

The next morning, on December 9, Bethea went to Krauss's office and asked to speak with Krauss and Scott. Bethea did not provide any advanced notice of what he needed to discuss. During this meeting, Bethea stated that he wanted to honor the Sabbath by not working on Saturdays. He did not elaborate on his request or explain his religious beliefs, nor did he identify his religion. He did not explain the religious beliefs underlying his request because "the atmosphere and the vibe [he] got . . . just

didn't warrant it, it didn't feel—like, they weren't responsive to it, initially, they didn't show any true interest in it." Bethea Dep. 242:13-22, Ex. 1A, ECF No. 37-2.

Following the meeting, Krauss requested assistance from Access Bank's Human Resources Manager, Margie Shaffer, to respond appropriately to Bethea's request. Shaffer, Scott, and Bethea met later on December 9, 2015, to discuss Bethea's proposed accommodation. The purpose of this meeting was to facilitate a dialogue with Bethea and gather information about what his request meant moving forward. At the meeting, Bethea offered no further explanation for his request or underlying religious beliefs, but advised that going forward, he would need Saturdays off.

Shaffer sent Bethea an email that recapped the group's conversation at the meeting. Shaffer stated in the email that the Bank requested a letter from Bethea's place of worship, which included his membership standing, minister's name and contact information, and the specific requirements he needed for his proposed scheduling accommodation moving forward. Bethea later testified that he felt bullied during the meeting and by Shaffer's follow-up email. Based on his conversations with Krauss, Scott, and Shaffer, Bethea testified that he "felt [he] was being treated very differently." Bethea Dep. 255:9-22, Ex. 1A, ECF No. 37-2. Bethea's request was not denied, and he knew if he was not available to work Saturdays, the Bank would be left with only three tellers to work that shift and would be forced to find a substitute not otherwise scheduled to work, or hire a replacement.

On the evening of December 9, 2015, Scott sent an email to Shaffer and asked Shaffer to connect with Strawhecker. On the morning of December 10, Shaffer contacted Strawhecker, who verbally informed Shaffer about the text message she

received from Bethea on December 8. Later that morning, Strawhecker sent an email to Shaffer, quoting the language of Bethea's text message. Strawhecker stated in the email that the text message "instantly made me feel uncomfortable and nervous about how I should respond or what I should do." Ex. 2C, ECF No. 37-21. Strawhecker also stated that she was scheduled to close the Bank with Bethea that evening and anticipated it would be "uncomfortable and tense." Ex. 2C, ECF No. 37-21.

Shaffer immediately brought the text message and Strawhecker's email to the attention of the Bank's Executive Vice President & Chief Financial Officer, Dana Henricksen, and its Chief Business Development Officer, Nathan Christ. The Bank decided that the text was inappropriate, not conducive to a healthy work environment, and grounds for termination because it made an employee feel uncomfortable and afraid. Later that morning, Krauss and Shaffer called Bethea to a meeting. Krauss and Shaffer showed Bethea a copy of the text message he sent to Strawhecker. Bethea admitted he sent the text message. Krauss and Shaffer advised Bethea the text message was not appropriate and a co-worker had complained. On these grounds, Bethea was terminated immediately.

Bethea filed a Charge of Discrimination with the NEOC on or about February 4, 2016. The NEOC issued a finding of no reasonable cause and dismissed the charge. Ex. 1P, ECF No. 37-17. On April 18, 2017, Bethea filed his Complaint asserting two causes of action: religious discrimination and retaliation under Title VII and the Nebraska Fair Employment Practices Act, Neb. Rev. Stat. §§ 48-1114, 48-1119. As part of his religious discrimination claim, Bethea alleges that Access Bank failed to accommodate his request to avoid working on Saturdays. On July 17, 2017, the Court

dismissed Bethea's state law claims as untimely. Access Bank now seeks dismissal of Bethea's remaining Title VII claims.

## STANDARD OF REVIEW

"Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." *Garrison v. ConAgra Foods Packaged Foods, LLC*, 833 F.3d 881, 884 (8th Cir. 2016) (citing Fed. R. Civ. P. 56(c)). "Summary judgment is not disfavored and is designed for every action." *Briscoe v. Cty. of St. Louis*, 690 F.3d 1004, 1011 n.2 (8th Cir. 2012) (quoting *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) (en banc)). In reviewing a motion for summary judgment, the Court will view "the record in the light most favorable to the nonmoving party . . . drawing all reasonable inferences in that party's favor." *Whitney v. Guys, Inc.*, 826 F.3d 1074, 1076 (8th Cir. 2016) (citing *Hitt v. Harsco Corp.*, 356 F.3d 920, 923–24 (8th Cir. 2004)). Where the nonmoving party will bear the burden of proof at trial on a dispositive issue, "Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c), except the mere pleadings themselves." *Se. Mo. Hosp. v. C.R. Bard, Inc.*, 642 F.3d 608, 618 (8th Cir. 2011) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). The moving party need not produce evidence showing "the absence of a genuine issue of material fact." *Johnson v. Wheeling Mach. Prods.*, 779 F.3d 514, 517 (8th Cir. 2015) (quoting *Celotex*, 477 U.S. at 325). Instead, "the burden on the moving party may be discharged by 'showing' . . . that there is an absence of evidence to support the nonmoving party's

case." *St. Jude Med., Inc. v. Lifecare Int'l, Inc.*, 250 F.3d 587, 596 (8th Cir. 2001) (quoting *Celotex*, 477 U.S. at 325).

In response to the moving party's showing, the nonmoving party's burden is to produce "specific facts sufficient to raise a genuine issue for trial." *Haggenmiller v. ABM Parking Servs., Inc.*, 837 F.3d 879, 884 (8th Cir. 2016) (quoting *Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 853 (8th Cir. 2012)). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial." *Wagner v. Gallup, Inc.*, 788 F.3d 877, 882 (8th Cir. 2015) (quoting *Torgerson*, 643 F.3d at 1042). "[T]here must be more than the mere existence of some alleged factual dispute" between the parties in order to overcome summary judgment. *Dick v. Dickinson State Univ.*, 826 F.3d 1054, 1061 (8th Cir. 2016) (quoting *Vacca v. Viacom Broad. of Mo., Inc.*, 875 F.2d 1337, 1339 (8th Cir. 1989)).

In other words, in deciding "a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." *Wagner*, 788 F.3d at 882 (quoting *Torgerson*, 643 F.3d at 1042). Otherwise, where the Court finds that "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," there is no "genuine issue of material fact" for trial and summary judgment is appropriate. *Whitney*, 826 F.3d at 1076 (quoting *Grage v. N. States Power Co.-Minn.*, 813 F.3d 1051, 1052 (8th Cir. 2015)).

## DISCUSSION

Title VII of the Civil Rights Act prohibits employment discrimination on the basis of religion. 42 U.S.C. § 2000e-2(a). Title VII also prohibits retaliation against an

employee "because he has made a charge, testified, assisted, or participated in . . . an investigation, proceeding, or hearing under 42 U.S.C. § 2000e-3(a). Bethea's religious discrimination and retaliation[2] claims fail because he has not presented any evidence raising a genuine of issue of material fact as to whether the Bank's stated reason for his termination was pretext for discrimination or retaliation. Bethea's accommodation claim fails because he has not established a prima facie case of failure to accommodate, and his proposed accommodation would have imposed an undue hardship on both Access Bank and Bethea's coworkers.

## I. Discrimination and Retaliation Under Title VII

"To survive a motion for summary judgment with a Title VII claim, a plaintiff must show either direct evidence of a Title VII violation or create an inference of discrimination or retaliation under the *McDonnell Douglas*[3] burden-shifting framework." *Shirrell v. St. Francis Med. Ctr.*, 793 F.3d 881, 887 (8th Cir. 2015).

"Direct evidence of discrimination requires 'a specific link between the [alleged] discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the employer's decision.'" *Id.* (quoting *Putman v. Unity Health Sys.*, 348 F.3d 732, 735 (8th Cir. 2003)) (alteration in original). Similarly, "[d]irect evidence of retaliation" requires "a specific link between a materially adverse action and the protected conduct, sufficient to support a

---

[2] Bethea did not address his retaliation claim in his opposition brief, and the Court infers from his silence an abandonment of that claim. *See Spencer v. Moreno*, No. 4:02CV3049, 2003 WL 1043318, at *5 (D. Neb. Mar. 11, 2003) (failure to show or to attempt to show right to pursue claim in response to arguments raised in defendants' motion appears to constitute an abandonment of the claim or a concession to defendants' argument). Regardless, the Court's reasoning with respect to pretext applies to both his discrimination and retaliation claims.

[3] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-03 (1973).

finding by a reasonable fact finder that the harmful adverse-action was in retaliation for the protected conduct." *Lors v. Dean*, 746 F.3d 857, 865 (2014). "'[D]irect refers to the causal strength of the proof, not whether it is 'circumstantial' evidence." *Guimaraes v. SuperValu, Inc.*, 674 F.3d 962, 972 (8th Cir. 2012).

Absent direct evidence, "the *McDonnell Douglas* framework applies, which requires a plaintiff to make a prima facie case of discrimination or retaliation." *Shirrell*, 793 F.3d at 887. If the plaintiff establishes a prima facie case, "a presumption of discrimination [or retaliation] arises and the burden shifts to [the defendant] to present evidence of a 'legitimate, nondiscriminatory reason for' its adverse employment action." *Banks v. Deere*, 829 F.3d 661, 666 (8th Cir. 2016) (quoting *McDonnell Douglas*, 411 U.S. at 802). "If [the defendant] meets that burden, the presumption disappears and [the plaintiff] must prove [the defendant's] proffered justification is merely a pretext for discrimination." *Schaffhauser v. United Parcel Serv., Inc.*, 794 F.3d 899, 903 (8th Cir. 2015).

Because Bethea presented no direct evidence of discrimination or retaliation, the Court evaluates his religious discrimination and retaliation claims under the *McDonnell Douglas* burden-shifting framework. Assuming Bethea can establish a prima facie case,[4] the Court looks to the legitimate, non-discriminatory reason Access Bank gave

_____

[4] To establish a prima facie case of religious discrimination, Bethea must show: (1) he is a member of a protected class because of his religious beliefs, (2) he met Access Bank's legitimate expectations, (3) he suffered an adverse employment action, and (4) the circumstances give rise to an inference of discrimination. *Shirrell v. St. Francis Med. Ctr.*, 793 F.3d 881, 887 (8th Cir. 2015) (citing *Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 853 (8th Cir. 2012)). To establish a prima facie case of retaliation, Bethea must show: (1) he engaged in protected activity, (2) he suffered an adverse employment action, and (3) a causal connection exists between the two. *Id.* at 888. While there are numerous issues of proof with respect to Bethea's prima facie case, the timing of his termination is at least cause for concern. Accordingly, the Court assumes without deciding that Bethea has proven his prima facie case on these claims.

as the basis for his termination.  Bethea has failed to provide evidence demonstrate that there is any genuine issue of material fact as to whether the Bank's proffered reason for his termination was pretext for discrimination or retaliation.

### A.  Non-Discriminatory Reason for Termination

"[V]iolations of company policy are legitimate, nondiscriminatory reasons for termination." *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 995 (8th Cir. 2011) (citing *Kiel v. Select Artificials, Inc.,* 169 F.3d 1131, 1135 (8th Cir.1999) (en banc) (holding that violating company policies is a legitimate reason for termination)).

Bethea violated Bank policy in his text message to Strawhecker. His text stated he was "mad as a muthafucka" and wanted to "prove a point."  Ex. 1N, ECF No. 37-15. Profane, abusive language was specifically listed as "Improper Conduct" that could result in termination.  Employee Handbook, Ex. 2A at 33, ECF No. 37-19, Page ID 364. Strawhecker told Shaffer the text caused her to feel uncomfortable and afraid. Shaffer Dec. ¶ 14, Ex. 2, ECF No. 37-18. Strawhecker stated in an email that the text message "instantly made [her] feel uncomfortable and nervous about how [she] should respond or what [she] should do." Ex. 2C, ECF No. 37-21. Strawhecker was scheduled to close the Bank with Bethea that evening and anticipated it would be "uncomfortable and tense." *Id.*  For these reasons, the Bank determined the text was inappropriate and not conducive to a healthy work environment.  Accordingly, the Bank has articulated a non-discriminatory justification for Bethea's termination.

Bethea argues that the Bank's reason for termination was insufficient because Strawhecker testified at her deposition that she was "not upset" and only felt a little

uncomfortable.   Culver[5] Dep. 11:16-25, ECF No. 37-3. Bethea argues that because Strawhecker did not feel threatened by Bethea's text message, there is a genuine issue as to whether his text violated policy.   Yet Shaffer and the Bank did not have Strawhecker's deposition testimony at the time of Bethea's termination.   Strawhecker's verbal and email communications to the Bank managers following her receipt of Bethea's text indicated she was nervous and uncomfortable as a result of the text, which included vulgar or obscene language expressing anger and hostility toward Bank management.   The Bank's decision was based on information it had at the time of Strawhecker's complaint. *See Rooney v. Rock-Tenn Converting Co.*, 878 F.3d 1111, 1118 (8th Cir. 2018) ("[A] federal court is not a super-personnel department with authority to review the wisdom or fairness of business judgments made by employers."). Bethea's actions violated Bank policy, and Strawhecker's deposition testimony fails to create a triable issue as to whether the Bank's proffered reason was legitimate.

### B.  Pretext for Discrimination

Bethea argues that the Bank's proffered reason for his termination was a pretext for discrimination because (a) other Bank employees were treated differently, and (b) his request for Saturdays off and his termination occurred in temporal proximity.

#### *1. Disparate Treatment*

"A plaintiff may show pretext, among other ways, by showing that an employer . . . . treated similarly-situated employees in a disparate manner . . . ." *Edwards v. Hiland Roberts Dairy, Co.*, 860 F.3d 1121, 1125-26 (8th Cir. 2017) (quoting *Schaffhauser*, 794

---

[5] Strawhecker changed her surname to Culver before her deposition. The Court refers to her as Strawhecker because that is how her name appeared in Bank records related to the relevant period of this litigation.

F.3d at 904). "At the pretext stage, the test for whether someone is sufficiently similarly situated, as to be of use for comparison, is rigorous." *Edwards*, 860 F.3d at 1126 (quoting *Johnson v. Securitas Sec. Servs. USA, Inc.*, 769 F.3d 605, 611 (8th Cir. 2014)). The employees used for comparison must be "similarly situated in all relevant respects." *Id.* They also "must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." *Id.*

In support of his argument, Bethea cites only Shaffer's deposition testimony that other Bank employees used foul language, and she was not aware of another Bank employee who was fired for using such language. Bethea has not shown that other employees who used foul language were similarly situated to him in all relevant respects. For example, he has not shown that the Bank managers were aware of any other employee who used vulgar or obscene language in a communication with a co-worker, expressing anger or hostility toward Bank management, and the Bank managers failed to terminate that employee. Thus, he has failed to establish an inference that the Bank's proffered reason for his termination was pretextual.

### 2. Temporal Proximity

The Eighth Circuit has recognized that, in establishing a prima facie case, close proximity in time between adverse employment action and protected activity "warrants concern." *Sprenger v. Fed. Home Loan Bank of Des Moines*, 253 F.3d 1106, 1113-14 (8th Cir. 2001); *see also O'Bryan v. KTIV Television*, 64 F.3d 1188, 1193 (8th Cir. 1995) ("[T]he close proximity in time between plaintiff's administrative filings and his termination established, at minimum, a genuine issue of material fact on the elements of

his prima facie case.") (internal quotation and citation omitted). However, the Eighth Circuit is "hesitant to find pretext or discrimination on temporal proximity alone," and looks "for proximity in conjunction with other evidence." *Id.* at 1114 (internal citations omitted). An argument "built on temporal proximity, is undermined where the allegedly retaliatory motive coincides temporally with the non-retaliatory motive." *Wierman*, 638 F.3d at 1001.

Here, Bethea notes his termination occurred the day after his request to be excused from working on Saturdays. While this proximity may be sufficient to establish a prima facie case, it does not demonstrate pretext. *See Sprenger*, 253 F.3d at 1113-14 (temporal proximity was sufficient to establish prima facie case, but not to show pretext). Bethea does not attempt to identify any evidence demonstrating pretext, save for a reference to his conversation with Scott, who told Bethea he could have the day off if he could find a substitute who could work overtime, and open and close accounts. Bethea Dep. 224:12-19, Ex. 1A, ECF No. 37-2. Bethea argues that because he was not responsible for opening and closing accounts, Scott's request that he find a substitute teller who could perform this function demonstrates pretext. The conversation with Scott occurred before the Bank was aware of the text message, and is not the adverse employment action at issue. Scott's conditional approval of Bethea's request does not suggest that the Bank's proffered reason for his termination—the text message—was pretextual.

Even assuming Bethea can present a prima facie case on his religious discrimination and retaliation claims, Access Bank provided a legitimate, non-discriminatory reason for his termination. Bethea has not come forward with evidence

demonstrating a genuine issue of material fact as to whether Access Bank's proffered reason for his termination was pretext for discrimination or retaliation. Accordingly, Bethea's claims for religious discrimination and retaliation will be dismissed.

## II. Failure to Accommodate

To succeed on a claim for religious discrimination based upon a failure to accommodate, the plaintiff must first establish a prima facie case by showing that he: (1) has a bona fide religious belief that conflicts with an employment requirement; (2) informed the employer of this belief; and (3) was disciplined for failing to comply with the conflicting requirement. *Jones v. TEK Indus., Inc.*, 319 F.3d 355, 359 (8th Cir. 2003). If the plaintiff makes a prima facie case, the burden shifts to the employer to show that the requested accommodation would result in undue hardship to the employer. *Seaworth v. Pearson*, 203 F.3d 1056, 1057 (8th Cir. 2000) (citing 42 U.S.C. § 2000e(j)). Bethea has not presented a prima facie case and, even if he could, his claim still would fail because his request to be excused from all work on Saturdays was unreasonable as a matter of law.

### A. Prima Facie Case

#### 1. Notice of Beliefs

Even if Bethea can show a sincere belief that his religion prohibits him from working on Saturdays, he has not shown that he provided sufficient notice of his beliefs to Access Bank. "A person's religion is not like his sex or race - something obvious at a glance." *Reed*, 330 F.3d at 935-36. "Employers are not charged with detailed knowledge of the beliefs and observances associated with particular sects." *Id.* An employee bears responsibility for effectively communicating the need for a religious

accommodation and working with the employer toward a mutual compromise. *See Chrysler Corp. v. Mann*, 561 F.2d 1282, 1285 (8th Cir. 1977). Further, an employee cannot "shift all responsibility for accommodation to his employer." *Id.* Thus, an employee cannot display an "active interest in observing the practices of his religion and a disinterest in explaining his religious needs" to his employer. *Id.*

Bethea admits that when he first told Scott of his request for Saturdays off, the conversation was brief and Bethea provided no explanation of his religious tenets. Bethea Dep. 197:17-24; 221:20-222:1, Ex. 1A, ECF No. 37-2. In a conversation that lasted a "couple minutes," Bethea told Neal Krauss he would like to have "Saturday off for the Sabbath" but offered no other details. Bethea Dep. 212:25-213:17; 222:2-5, Ex. 1A, ECF No. 37-2. When Bethea later met with Scott and Krauss together, Bethea did not inform Krauss or Scott of his religion. (Ex. 1A, Bethea Dep., 241:20-25).

Bethea's request to be relieved from working on Saturdays lacked not only substantive explanation, but also reasonable advance warning. An employee's abrupt citation to religious beliefs as the basis for missing work immediately before the requested absence is insufficient notice. *Johnson v. Angelica Unif. Grp., Inc.*, 762 F.2d 671, 673-74 (8th Cir. 1985). In *Johnson*, the Eighth Circuit concluded that a plaintiff failed to provide adequate notice to her employer of the need for an accommodation when the plaintiff left a note just before missing several days for religious purposes. *Id.* If plaintiff had informed a supervisor of her need for religious accommodation "when she began work" or with at least some reasonable advanced notice, the employer could have evaluated her needs and potentially worked out a mutually agreeable scheduling arrangement. *Id.* at 673.

Bethea accepted his position at Access Bank by representing he had open availability, and he consistently worked on Saturdays as assigned for one year without issue or complaint. Ten days prior to his request for accommodation, Bethea worked a Saturday shift without objection. Bethea first requested accommodation three days before he was scheduled to work on a Saturday. The short notice failed to provide Access Bank a reasonable opportunity to work with Bethea to come to an agreeable, long-term solution.

### 2. Discipline for Failure to Comply

To establish the third element of his prima facie case, Bethea must show that he would have retained his job had he continued to work on Saturdays. *See Jones*, 319 F.3d at 359. Bethea presented no evidence that he would have retained his job had he agreed to work on Saturdays. Moreover, Bethea admits that his request for accommodation was not denied, but was "still open, up in the air." Bethea Dep. 256:11-21, Ex. 1A, ECF No. 37-2. The Bank was in the process of determining its legal obligations in light of Bethea's request, but never denied the request. Shaffer Dec. ¶ 11, Ex. 2, ECF No. 37-18. Accordingly, Bethea failed to show that he suffered any adverse action based upon his refusal to work on Saturdays.

### B. Undue Hardship

Even if Bethea were to present a prima facie case of religious discrimination based on failure to accommodate, he has not refuted the Bank's evidence that accommodating Bethea's request would impose an undue hardship. *See Harrell v. Donahue*, 638 F.3d 975, 979 (8th Cir. 2011) (citing *Brown v. Gen. Motors Corp. (Brown I)*, 601 F.2d 956, 959–60 (8th Cir.1979); *accord*, *Peterson v. Hewlett–Packard Co.*, 358

F.3d 599, 606 (9th Cir.2004)).  Whether a proposed religious accommodation results in undue hardship is decided on a case-by-case basis.  *Harrell*, 638 F.3d at 979 (citing *Brown v. Polk Cnty. Iowa*, 61 F.3d 650, 654 (8th Cir. 1995)).

An employer may demonstrate undue hardship in two ways.  First, it may experience undue hardship if a religious accommodation creates more than a de minimis cost to the employer.  *See Transworld Airlines, Inc. v. Hardison*, 432 U.S. 63, 84 (1977). For example, in *Transworld Airlines, Inc. v. Hardison*, the Supreme Court concluded that requiring an employer to pay additional costs to give one employee time off constituted an undue hardship.  *Id.*; *see also Cloutier v. Costco Wholesale Corp.*, 390 F.3d 126, 134 (1st Cir. 2004) (stating that cost to an employer may be economic, such as lost business or the need to hire additional workers, or it may be noneconomic).

Second, an employer may establish undue hardship by showing that providing a religious accommodation would cause more than a de minimis imposition on coworkers. *Harrell*, 638 F.3d at 980 (8th Cir. 2011) (noting that "an accommodation creates an undue hardship if it causes more than a de minimis impact on co-workers" (citing *Brown*, 61 F.3d at 655))).  Although almost any religious accommodation will inevitably cause some differences in treatment among employees, "if accommodating an employee's religious beliefs also causes a 'real' and 'actual' imposition on co-workers, …. Title VII does not require an employer to make such an accommodation."  *Harrell*, 638 F.3d at 980 (citing *Trans World Airlines*, 432 U.S. at 81 (1977); *Brown I*, 601 F.2d at 961).  The unrefuted evidence shows that Bethea's requested accommodation—that he be permanently relieved from working on Saturdays—would have imposed an undue hardship both on the Bank and on Bethea's coworkers.

### 1. Undue Hardship on Access Bank

An employee's proposed religious accommodation presents an undue hardship if it would require the employer to hire additional workers. *Cloutier v. Costco Wholesale Corp.*, 390 F.3d 126, 134 (1st Cir. 2004); *Cooper v. Oak Rubber Co.*, 15 F.3d 1375, 1380 (6th Cir. 1994) (affirming that Title VII does not require an employer to hire an additional worker to accommodate an individual's request to observe the Sabbath on Saturdays). Likewise, an employer need not incur additional costs such as overtime pay for replacements. *Cook v. Chrysler Corp.*, 779 F. Supp. 1016, 1023 (E.D. Mo. 1991), aff'd, 981 F.2d 336 (8th Cir. 1992).

To fill the void caused by Bethea's permanent Saturday absences, it is likely the Bank would have had to pay overtime to current tellers or hire an additional one. Krauss Dec. ¶ 6, Ex. 3, ECF No. 37-22.  The Bank employed only four tellers (including Bethea) at its Shadow Lake branch, and required at least two to work at any given time for security reasons. Bethea admitted that if he stopped working Saturdays entirely, only three tellers would be left to work that shift "unless [the Bank] hired somebody in there." Bethea Dep. 240:2-10, Ex. 1A, ECF No. 37-2. Bethea also admitted that to accommodate his request, the Bank would be forced to find a substitute to cover each Saturday shift. Bethea Dep. 240:15-19, Ex. 1A, ECF No. 37-2.  This substitute would be a teller who was not otherwise scheduled to work. With only three tellers on staff, the substitute also would likely be required to work in excess of 40 hours and accrue overtime wages. Krauss Dec. ¶ 6, Ex. 3, ECF No. 37-22.  The unrefuted evidence shows that these costs would impose a greater than de minimis burden on Access Bank.

If the Bank did not hire additional employees, Bethea's proposed accommodation would have placed a burden on his three fellow tellers, simply because they did not share his religious beliefs. As noted above, an accommodation creates an undue hardship if it creates an "actual imposition on co-workers." *Brown v. Polk Cty., Iowa*, 61 F.3d 650, 655 (8th Cir. 1995). The Eighth Circuit has specifically recognized the substantial burden placed on other employees when a plaintiff's accommodation request is a complete refusal to work Saturdays. *See Harrell*, 638 F.3d at 980-81. In *Harrell*, a postal delivery employee requested every Saturday off because it conflicted with his Seventh-day Adventist beliefs. 638 F.3d at 978. To excuse the employee from Saturday work would have required the postal service to assign another carrier—who otherwise would have had the day off—in the employee's place. *Id.* at 981. "This accommodation would have burdened other [employees] with more Saturday work at least in part because they did not share [plaintiff's] religious beliefs." *Id.* The court found such impositions were "neither hypothetical nor speculative and would have constituted an undue hardship." Id.

Bethea's absence on Saturdays would have forced another teller—who would have not otherwise been scheduled—to work in his place. Krauss Dec. ¶ 6, Ex. 3, ECF No. 37-22.; Bethea Dep. 240:15-241:19, Ex. 1A, ECF No. 37-2. Title VII does not require coworkers to shoulder the extra workload or undesirable work hours created by a proposed accommodation.

Access Bank has provided evidence that Bethea's proposed accommodation would impose a greater than de minimus burden on the Bank and/or on Bethea's

coworkers. Bethea has not refuted this evidence. Accordingly, Bethea's proposed accommodation would have imposed an undue hardship, and his accommodation claim will be dismissed.

## CONCLUSION

Access Bank provided a legitimate, non-discriminatory reason for Bethea's termination. He failed to provide evidence that Access Bank's proffered reason for the termination was pretext for discrimination or retaliation. Bethea also failed to establish a prima facie case of religious discrimination based on a failure to accommodate; and he failed to refute evidence that his proposed accommodation would impose an undue burden on the Bank and its other employees. Accordingly, Bethea's claims will be dismissed.

IT IS ORDERED:

1.      Defendant Access Bank's Motion for Summary Judgment, ECF No. 36, is granted;

2.      This action is dismissed, with prejudice; and

3.      A separate judgment will be entered.


Dated this 15th day of June, 2018.

BY THE COURT:

s/Laurie Smith Camp
Chief United States District Judge